**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA *ex rel.*   )   Civil Action No. 1:13-CV-11997-DPW
ROSEMARY MORGAN-LEE, *etc.*          )
                                     )
            Plaintiffs,              )
        v.                           )
                                     )
THE WHITTIER HEALTH NETWORK,         )
INC., *et al.*                       )
                                     )
            Defendants.              )
_____    )

**MOTION AND MEMORANDUM OF LAW FOR AWARD OF REASONABLE
ATTORNEYS' FEES AND COSTS UNDER 31 U.S.C. §3730(d)(2)**

# TABLE OF CONTENTS

MOTION ................................................................................................................ 1

REQUEST FOR ORAL ARGUMENT ................................................................. 1

LOCAL RULE 7.1 CERTIFICATION ................................................................. 1

INTRODUCTION ................................................................................................. 2

SUMMARY OF RELEVANT FACTS ................................................................. 3

    Background and Experience of Fee Claimant Attorneys ........................................ 3

    Performance of Litigation Tasks .......................................................................... 4

        Drafting of Complaint and Disclosure Statement ........................................ 5

        Follow-Up Meetings, Client Interviews and Phone Conferences ............... 5

        First Amended Complaint, Further Disclosures and Unsealing ................. 5

        Subsequent Amendments and Motion Battles over Pleadings ................... 5

        Discovery Tasks ........................................................................................... 6

        Cross-Motions for Summary Judgment against TRM ................................. 6

        Settlement and Dismissal ............................................................................ 6

    Results Obtained .................................................................................................. 6

    Attorney Time Expenditure on the Merits ........................................................... 7

ARGUMENT ....................................................................................................... 8

    I.      Relator is Entitled To An Award of Reasonable Attorneys' Fees and Costs 8

    II.     Relator's Attorneys' fees Under the Act Must Be Determined Pursuant to the Adjusted Lodestar Methodology, With Close Attention to the *Qui Tam* False Claims Act Legal Marketplace ........................................................... 9

    III.    Counsel's Merits Lodestar is Reasonable and Compensable   .................. 9

        A. Number of Hours ...................................................................................... 9

        B. Hourly Rate, Determined by the Appropriate Market ......................... 11

    IV.    Lodestar Enhancements are Warranted for Time Expended Leading Up to the Settlement Agreement ......................................................................... 14

    V.     Counsel are Entitled To Reimbursement of Costs ..................................... 17

    VI.    Counsel are entitled to Fees on Fees ......................................................... 17

CONCLUSION ............................................................................................................. 19

FEE CHART ............................................................................................................... 20

CERTIFICATE OF SERVICE ..................................................................................... 21

# TABLE OF AUTHORITIES

Cases

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................ 9, 11

*Bouman v. Block*, 940 F.2d 1211 (9th Cir. 1991) ................................................................ 14

*Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558 (1st Cir. 1986) .................................... 12

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008) ............................. 17

*City of Burlington v. Dague*, 505 U.S. 557 (1992) .................................................... 14, 15

*Coutin v. Young & Rubicam P.R. Inc.*, 124 F.3d 331 (1st Cir. 1997) ......................... 9, 11

*Doe v. Crestwood*, 764 F. Supp. 1258 (N.D. Ill. 1991) ........................................... 18

*García-Rubiera v. Fortuño*, 727 F.3d 102 (1st Cir. 2013) ............................................. 9

*Grendel's Den, Inc. v. Larkin*, 749 F.2d 945 (1st Cir. 1984) ........................................... 9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................. 9, 10

*Jones v. District of Columbia*, 153 F. Supp. 3d 114 (D.D.C. 2015) ..................... 18

*Ketchum v. Moses,* 24 Cal.4th 1122 (2001) ...................................................... 14

*Lamphere v. Brown Univ.*, 610 F.2d 46 (1st Cir. 1979) .................................... 16

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) .......................................................................... 9

*Lipsett v. Blanco*, 975 F.2d 934 (1st Cir. 1992) ................................................. 14

*Lund v. Affleck*, 587 F.2d 75 (1st Cir. 1978) .................................................. 17

*McLaughlin by MCLaughlin v. Bos. Sch. Comm.*, 976 F. Supp. 53 (D. Mass. 1997) .... 14, 16

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ................................. 10, 14

*Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir. 1988) ................................... 10

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307 (7th Cir. 1996) ............................................................................................... 11

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) .................................. 9, 11, 14, 18

*Schneider v. Colegio de Abogados de P.R.*, 187 F.3d 30 (1st Cir. 1999) ....................... 11

*United States ex rel. Averback v. Pastor Med. Assocs. P.C.*, 224 F. Supp. 2d 342 (D. Mass. 2002) ...................................................................................... 10, 12

*United States ex rel. Simring v. Univ. Physician*, 2013 U.S. Dist. LEXIS 179451 (D.N.J. 2013) ............................................................................................ 17

*United States v. Metro Dist. Comm'n,* 847 F.2d 12 (1st Cir. 1988)  ................................ 10

*White v. City of Richmond*, 713 F.2d 458 (9th Cir. 1983)  ................................................... 9

## Statutes

Civil Rights Act, 42 U.S.C. §1988 .................................................................................. 14

False Claims Act, 31 U.S.C. §3730(d)(2)  .................................................... 1, 2, 7, 8, 14, 17

## Legislative History

S. Rep. No. 99-345, reprinted in 1986 U.S.C.C.A.N. 5266  ....................................... 14-15

House Report, 132 Cong. Rec. H9382-03, 1986 WL 786917 (Cong.Rec.)  ................... 15

## Rules

Local Rule 7.1 ................................................................................................................... 1

## MOTION

Relator Rosemary Morgan-Lee, by, through and on behalf of her attorneys of record, hereby moves the Court for a determination of reasonable attorneys' fees incurred in this action against defendant Whittier Health Network. This motion is brought pursuant to the False Claims Act, 31 U.S.C. §3730(d)(2), after successful resolution of relator's *qui tam* claims in a settlement agreement entered between relator, Whittier and the United States. It is grounded in the terms of the agreement, reserving relator's counsel's claims to fees, and it is preserved in the stipulation of dismissal as to Whittier. This motion is based upon the following Memorandum of Points and Authorities; the declarations of Attorneys Herman, Friedman, Moser, Durrell, Greene and Delaney; the attached time records and cost descriptions; all of the pleadings and proceedings in this action; additional testimony and documentation that is submitted in reply to Whittier's opposition; and any argument raised at the hearing on this matter.

## REQUEST FOR ORAL ARGUMENT

Relator requests oral argument to address determination of counsel's attorneys' fees and costs. A volume of time records are presented in the motion, but counsel expended substantial time reviewing those records, to make adjustments to their fee claim and to facilitate its resolution. It might prove to be an assistance to the Court to have counsel address those records in further detail. In addition, relator's counsel were unable to learn the substance of objections by Whittier, and are therefore less able to anticipate points in opposition to this motion. Counsel expect to seek leave to file a reply, but even if such a pleading is filed, a hearing would allow the parties a better opportunity to address before the Court any points of contention between them.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), Relator's counsel certify they attempted to resolve this fees dispute, including participating in an in-person and several telephonic conferences with Magistrate Judge M. Page Kelley, but were unable to reach agreement or narrow any issues in dispute.

## INTRODUCTION

For more than 5 years, Rosemary Morgan-Lee's attorneys labored in this complex, *qui tam* litigation against the Whittier Health Network, without compensation. Navigating through a treacherous statutory terrain, nurturing contacts with a team of attorneys from the government and private *qui tam* bar, digesting voluminous data from thousands of pages of documentation, and litigating claims of importance to the False Claims Act and the health and well-being of an at-risk elderly population, against highly-skilled defense attorneys, and without the intervening assistance of the United States, Morgan-Lee's attorneys brought this case from its inception in 2011 to its winning conclusion in 2016.

Attorney Louise Herman was particularly qualified to lead the effort. With a legal practice that was born the year of the 1986 False Claims Act amendments, Herman has devoted her efforts to representing relators and other plaintiffs in whistleblower actions. To date, she has led 13 different *qui tam* lawsuits involving health care, defense contractors, pharmaceutical companies, prevailing wages and state *qui tam* claims involving sales tax. Because of her specialized skills, knowledge, experience and reputation, Herman overcame numerous obstacles posed by the facts and circumstances of Morgan-Lee's claims, and without the intervention of the government recovered $2.5 million paid by Whittier to the United States Treasury.

In September 2016, Whittier settled the underlying *qui tam* litigation, ostensibly to resolve the claims and avoid legal costs associated with the litigation. By that time, however, Morgan-Lee's attorneys had incurred more than 1500 hours in the case. Despite best efforts to settle their fee claim subsequent to dismissal of the underlying action – including attendance of a settlement conference with Magistrate Judge Kelley – Morgan Lee's attorneys are required to expend additional time pursuing fees.

Pursuant to black-letter law, and in consideration of unique circumstances of fee awards under the False Claims Act – including legislative history on enhanced fees for relator's counsel to account for contingent risk – relator now ask the Court to award fully reasonable fees under §3730(d)(2) for work of counsel on her behalf.

## SUMMARY OF RELEVANT FACTS

**Background and Experience of Fee Claimant Attorneys**

In December 2011, Ms. Morgan-Lee began consulting with attorney Albin Moser about claims involving defendant Whittier. Moser is a 1999 law graduate, with 17 years litigation experience in federal courts, the State of Rhode Island and the Commonwealth of Massachusetts. As an associate in the Litigation Group of Edwards & Angell from 1999 to 2002, Moser worked on general litigation for the firm's clients, supporting a wide variety of the firm's groups. In his own private practice, which he began in 2002, Moser gained significant experience handling cases in several areas including business and corporate; real estate, land use and construction; civil rights; insurance; personal injury; wills, trusts and probate; employment; ethics; family law; and administrative law. He has also co-counseled with criminal defense attorneys in white collar cases that had overlapping criminal, civil and administrative issues. Moser Decl., ¶¶2-4.

In 2012, attorney Louise Herman began working on the litigation, first as co-counsel with Moser, and, in August of 2013, taking over as Morgan-Lee's only attorney. Herman has extensive experience in *qui tam* litigation, working on actions related to the False Claims Act for more than two decades. Since obtaining her law degree in 1986 (Boston University), Herman has been admitted to practice in New York, Rhode Island and Massachusetts, including federal district and circuit courts. In her practice, Herman has been responsible for litigating claims on behalf of individuals against major corporations, under federal and state laws, mainly the False Claims Act, and SEC and IRS whistleblower laws. To date, Herman has represented *qui tam* plaintiffs in 13 actions involving health care, defense contractors, pharmaceutical companies, prevailing wage and state *qui tam* claims involving sales tax. Herman Decl., ¶¶1-8.[1]

---

[1] Undersigned fees counsel has similar specialized experience in both False Claims Act cases and attorney fee disputes. Friedman Decl., ¶¶2-8. As stated there in more detail, he has served as lead counsel in more than a dozen *qui tam* actions, including a full trial in this District in 2013; and handled multiple dozens of fee disputes, including serving as fees counsel for *qui tam* litigators around the country.

**Performance of Litigation Tasks**

While Moser did not have *qui tam* experience, he recognized potential claims of fraud on federal funds, and he was able to explore Ms. Morgan-Lee's claims under the Act. Beginning in December 2011, Moser conducted interviews of relator and compiled extensive documentation regarding her claims. He conducted legal research into the viability of those claims under the False Claims Act. By February 2012, Moser developed an overview of facts and law, with emphasis on the TRM/Whittier partnership and the concordant rise in false claims practices. Moser Decl., ¶8.

Moser continued representing Morgan-Lee after the association of Herman. He participated in a series of meetings and interviews May through July 2012, and he worked on the initial disclosure statement in August and September of 2012. In January 2013, Moser participated in the meeting with United States Attorney's Office in Boston, followed by extensive additional interviews. In January 2013, Moser produced a large volume of documentation he and his office had compiled, coordinating with an outside agency to produce and preserve electronic data. From February to April 2013, Moser continued to compile and deliver supplemental disclosures. In May 2013, Moser completed and delivered an initial disclosure statement to the government, and continued to develop the factual and legal basis for the case until August of 2013. *Id.*, at ¶¶9-12.

As lead counsel with special skills and experience, Herman performed the bulk of work. From intake through pre-filing and post-filing investigation, government meetings, and ultimately settlement, she assumed and fulfilled primary responsibilities required for the successful resolution of this case. Herman Decl., ¶¶11m 12. Given the government's decision to not intervene in this action, vindication of interests belonging to Morgan-Lee and federal taxpayers depended exclusively the work of attorney Herman. *See*, *e.g.*, Durrell Decl., ¶9 ("When, as here, the United States declines to join the case ... it is critical that the relator's counsel be experienced in *qui tam* litigation").

As stated in greater detail (Herman Decl., ¶¶12 to 24), during the period this case was pending, Herman reasonably and necessarily expended time on many litigation tasks:

**– Drafting of Complaint and Disclosure Statement**. Herman researched, investigated and reviewed over 10,000 documents, including treatment records, billing records, Medicare appeals, emails regarding patient treatment and care, memos, hand written notes, patient therapy charts, training materials and corporate policies and other related procedures. As required by the Act, she provided the Government with material evidence, and prepared a 19 page single-spaced statement with 138 pages of exhibits. At the request of the government, she reviewed hundreds of pages of additional material; and then filed a 46 page complaint alleging interrelated theories of fact and law against Whittier, TRM and other related defendants. She also attended several meetings with co-counsel, negotiated a joint prosecution agreement and relator share agreement, drafted correspondence and participated in many phone conferences.

**– Follow-Up Meetings, Client Interviews and Phone Conferences.** Herman spent considerable time attending and preparing for four separate relator interviews conducted by government attorneys and investigators. She also met and conferred by phone with the Government, preparing additional disclosures, a detailed memorandum, an agenda, damages analysis, exhibits, letters and emails in support of the complicated factual scenario that were taking place among the respective facility defendants.

**– First Amended Complaint, Further Disclosures and Unsealing**. In light of additional information obtained since the initial filing, Herman amended the complaint, and provided the government with newly discovered documentation. After the August 11, 2014 notice of non-intervention, Herman was required to litigate issues of consolidation, file a joint statement, draft and serve waivers, summonses, stipulations, and motions, review of defense filings and attend court conferences.

**– Subsequent Amendments and Motion Battles over Pleadings**. After continued investigation, Herman drafted an 80-page Second Amended Complaint, which included additional factual detail and expanded upon the scope of over-billing. Twenty-two named defendants, including 7 Whittier defendants, moved to dismiss, and Herman prepared an opposition requiring extensive legal research and complex factual issues. In connection

with those claims, Herman drafted motions and memoranda of law seeking leave to file a third and fourth amended complaint, which were granted. Herman voluntarily dismissed counts against non-Whittier defendants, leaving Whittier as the only *qui tam* defendant.[2]

– **Discovery Tasks**. Herman performed substantial work related to discovery. She reviewed and made significant revisions to a proposed protective order; propounded 19 Interrogatories and 64 Requests for Production of Documents to TRM, the therapy service company hired by Whittier; prepared responses to discovery requests by TRM; prepared 10 subpoenas for documents and a deposition subpoena from former employees of TRM who worked at Whittier facilities; reviewed over 4000 pages of produced documents; prepared for and conducted a total of 9 depositions; and prepared Morgan-Lee for 2 days of deposition. Throughout, she conferred with the AUSA regarding information obtained, and provided a detailed analysis of the evidence against Whittier.

– **Cross-Motions for Summary Judgment against TRM.** Herman filed an affirmative motion for summary judgment, and responded to a motion for summary judgment by TRM, concerning Morgan-Lee's retaliation claims. Significant time was expended on this process, including review and systhesis of supporting evidence, filing pleadings and arguing before the Court, and communicating information about the evidence and claims to government attorneys.

– **Settlement and Dismissal**. After Whittier agreed to settle, Herman reviewed and approved terms of the settlement (Herman Decl. Exh. B), and filed a joint stipulation for dismissal of claims against Whittier, with prejudice to Morgan-Lee's *qui tam* claims.

## Results Obtained

As a result of counsel's efforts, the United States recovered $2.5 million dollars from Whittier, including a settlement agreement that restricts the ability of Whittier to charge any of its payments or associated costs back to the government. Although Herman voluntarily dismissed defendant HealthConcepts with prejudice, the government

---

[2]Relator's claims against TRM were for retaliation claims brought under §3730(h).

subsequently settled with that defendant for $2.2 million, based upon Herman's claims in this case. In light of the role played by Morgan-Lee and her counsel, the government agreed to pay relator the maximum share permitted under §3730(d)(2): 30%. In addition to the fiscal recovery, counsel's work on behalf Morgan-Lee vindicates an important public interest, protects medically fragile and vulnerable elderly patients from abuse and neglect, and stands against the false claims on federal funds.

**Attorney Time Expenditure on the Merits**

On the merits of this litigation – from the start of the work until entry of dismissal pursuant to the settlement – attorneys working for Morgan-Lee devoted in total approximately 1650 hours by attorney and non-attorney time-keeper: with 1441hours by Herman and other timekeepers in her office, and 218 hours by Moser and his associate.[3] All of this time was actually expended and, in the professional judgment of the fee claiming attorneys, was reasonable and necessary to the successful litigation of *qui tam* claims against Whittier. Totals are based upon detailed time records, which are based on contemporaneous records, and reviewed against for accuracy and reasonableness by these claimants, and fees counsel, in connection with this fee petition. Herman Decl., ¶¶26 & 27; Moser Decl., ¶¶15 & 16.[4]

Although all of this time is compensable, fee claimant attorneys make substantial additional voluntary reductions to their fees. These reductions are intended to foreclose anticipated arguments by Whittier regarding time spent against non-Whittier defendants, and to facilitate the resolution of this fee petition.

1.   Moser reduced his time by 11.6 hours, and he makes no claim for substantial productive work – in the range of 150 to 250 hours – spent by paralegals.

---

[3]Melissa Braatz is a 2002 law graduate who worked as an associate with Moser, *id.*, ¶5.

[4]Herman testifies (¶28) that, as a result of her work on behalf of individual clients, her need to confer productively with colleagues at odd times, and her record keeping practices, a substantial amount of productive, billable time goes unrecorded. She estimates that as much as 25% of her time thus goes unclaimed.

2.   Herman reduced her time spent reviewing documents and drafting disclosures 5.7 hours, which represents 100% of the time spent exclusively on non-Whittier False Claims Defendants.  Herman Decl., ¶32.

3.   Herman reduced her time by 27.7 hours of general litigation time, which represents 100% of the time she spent on non-Whittier defendants and efforts to amend the complaint regarding defamation and retaliation. *Id*.

4.   Herman reduced her time by 3.5 hours spent reviewing documents related to Diosceses defendants in the amended complaint. *Id*.

5.   Herman reduced her time by 18.8 hours expended in discovery, issuing subpoenas, obtaining records and related to employment damages, which represents 6.5% of the total time expended on discovery (289 hours). *Id*.

6.   Herman reduced her time by 153 hours of time expended on summary judgment proceedings with TRM, constituting 50% of the total time (306 hours) expended on those proceedings. *Id*.

In sum, relator's counsel reduced their claim by a total of 220 hours, in addition to substantial unrecorded productive time, and 150-250 hours of Moser paralegals time.

## ARGUMENT

## I.   Relator is Entitled To An Award of Reasonable Attorneys' Fees and Costs

Under the terms of the settlement agreement, in release of relator's non-intervened claims, Whittier agreed to the terms of a settlement that required payment of $2.5 million, and expressly reserved this claim to reasonable fees pursuant to §3730(d)(2). Recital paragraph G states: "Relator claims entitlement under 31 U.S.C. § 3730(d) to ... Relator's reasonable expenses, attorneys' fees and costs." Paragraph 6of the agreement reads:

> Nothing in the Settlement Agreement shall preclude Relator from seeking to recover Relator's expenses or attorney's fees and costs from Whittier and Leo Curtin pursuant to 31 U.S.C. §§3730(d), which is fully reserved and not released.

As a result of the settlement, relator's entitlement to an award under §3730(d)(2) is not in question. Only the amount of fees and costs needs to be determined by the Court.

**II.  Relator's Attorneys' fees Under the Act Must Be Determined Pursuant to the Adjusted Lodestar Methodology, With Close Attention to the *Qui Tam* False Claims Act Legal Marketplace**

Determination of the amount of reasonable fees in this case is guided by black-letter law and predicated on undisputed facts and circumstances of this litigation. Under general federal fees law, statutory attorneys' fees and costs are determined by the adjusted lodestar methodology. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 886 (1984); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973). *See García-Rubiera v. Fortuño*, 727 F.3d 102, 116 (1st Cir. 2013) ("A district court can hardly go wrong in selecting the so-called lodestar method when called upon to determine how much of an attorneys' fee a losing defendant need pay a prevailing plaintiff"); *Coutin v. Young & Rubicam P.R. Inc.*, 124 F.3d 331, 337 (1st Cir. 1997) ("The lodestar method is the strongly preferred method by which district courts should determine what fees to award prevailing parties").

As explained by the Supreme Court, the adjusted lodestar method is used to provide "an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433. It "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case;" and it "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-552 (2010).

**III. Counsel's Merits Lodestar is Reasonable and Compensable**

**A. Number of Hours**: The starting point for determining the lodestar is the number of hours reasonably expended in the litigation. *Blum*, 465 U.S. at 888; *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984) ("To determine the number of hours reasonably spent, one must first determine the number of hours actually spent and then subtract from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary"). Here, all hours expended in the litigation and claimed in this fee petition were reasonable and necessary to the prosecution of this *qui tam* action. Whittier

will be unable to show that, with respect to any time entry, or total hours claimed, "counsel substantially exceeded the bounds of reasonable effort." *United States v. Metro Dist. Comm'n,* 847 F.2d 12, 17 (1st Cir. 1988) (citation and internal quotation marks omitted). *See United States ex rel. Averback v. Pastor Med. Assocs. P.C.*, 224 F. Supp. 2d 342, 351 (D. Mass. 2002).

Indeed, it would be highly unlikely that experienced attorneys like Morgan-Lee's counsel would bill for unnecessary time. As noted by the Ninth Circuit:

> lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. It would therefore be the highly atypical civil rights case where plaintiff's lawyer engages in churning. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

*See also Norman v. Housing Authority*, 836 F.2d 1292, 1306 (11th Cir. 1988) ("The measure of reasonable hours is determined by the profession's judgment of the time that may be consciously billed and not the least time in which it might theoretically have been done").

No reduction in time expended by counsel is warranted for any purported lack of success on non-Whittier claims. Although attorneys for Morgan-Lee may not have prevailed on every theory and every contention, on behalf of relator they obtained excellent results, and lost no claims to litigation on the way. Under such circumstances, they are entitled to a fully-reasonable award..

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. **Normally this will encompass all hours reasonably expended on the litigation,** and indeed in some cases of exceptional success an enhanced award may be justified. **In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.** The result is what matters. *[Hensley*, 461 U.S. at 435 (citation omitted) (emphasis supplied).]

Moreover, no further reductions are needed to address time spent on non-Whittier claims. As explained above, in pursuing the *qui tam* action, Herman necessarily and

reasonably expended time on claims against defendants HealthConcepts and Dioceses. These *qui tam* claims were related both factually and legally with Morgan-Lee's action against Whittier, and time spent also benefitted its successful prosecution. Similarly, during the litigation, Herman spent time on Morgan-Lee's retaliation claim against TRM. But as explained by counsel, the factual and legal issues addressed in the retaliation claim had significant overlay on this *qui tam* action. As Herman explains (at ¶24), much of the work on TRM discovery involved Whittier employees and Whittier facilities, concerning issues that were central to Morgan-Lee's *qui tam* claims.

In these circumstances, there is no need to make a reduction of fees under *Hensley* to account for limited success. See *Hensley*, 461 U.S. at 440 (fees based on related claims should not be reduced merely because the plaintiff did not prevail on every claim); *Schneider v. Colegio de Abogados de P.R.*, 187 F.3d 30, 33 (1st Cir. 1999) (no reduction for time spent on reasonably related unsuccessful claims); *Coutin*, 124 F.3d at 339 (claims are unrelated when they "rest on different facts *and* legal theories") (emphasis supplied by the *Schneider* concurrence).

**B. Hourly Rate, Determined by the Appropriate Market**. In finding reasonable hourly rates, the Court should consider counsel's specialized skills and experiences, the nature of their work, their customary billing rates and the prevailing rates charged by attorneys of similar skill and experience for comparable legal services in the community. Under the lodestar method, the Court "looks to 'the prevailing market rates in the relevant community." *Perdue*, 130 S. Ct. at 1672 (quoting *Blum*, 465 U.S. at 895). Some courts have held that the "attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). *See also Blum*, 465 U.S. at 890 (special qualifications of plaintiff's counsel justifies a higher rate based upon market treatment of the specialized skills and experiences).

Relator's counsel have meet their burden providing testimony to establish: (1) fee claimants' skills, knowledge, experience and reputation forming the basis for claimed

hourly rates; and (2) prevailing rates in the community for similarly qualified attorneys. *Averback,* 224 F. Supp. 2d at 353. *See Blum*, 465 U.S. at 895-96 n. 11; *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986) (applicant bears burden of providing "information about fees customarily charged in the locality for similar legal services and information about the experience and billing practices of the attorneys in question").

Relator presents a substantial evidentiary record on the market treatment of specialized skills and experience needed to litigate False Claims Act cases. As explained by preeminent False Claims Act attorney Suzanne Durrell (¶¶8):

> As I learned as a lawyer for the United States as well as my private practice for more than a decade, when pursuing *qui tam* cases, it is important that the relator be represented by capable lawyers with experience under the False Claims Act, and particularly by lawyers with expertise in the area of government contracting on which a case focuses, such as health care (Medicare and Medicaid) fraud. False Claims Act litigation on behalf of the relator requires at least one lead counsel who is familiar with the complexities of the False Claims Act statute, the meaning and significance of the defendant's actions within a particular regulatory context, and the interactions with the government while the case is under seal.

*See also id.*, at ¶9 ("Relator's counsel must understand, anticipate and be prepared to deal with myriad substantive and procedural issues and processes to overcome obstacles at all stages of the *qui tam* action: pre-filing investigation, drafting of the complaint and disclosure statements, assistance to the government in its investigation, resolution of discovery disputes, review of voluminous records, and negotiations over intervention and settlement of the claims"); Greene Decl., ¶4 ("successful prosecution of False Claims Act *qui tam* actions usually requires a team of qualified attorneys with at least one lead counsel who possesses specialized skills and experience in work under the Act"); Delaney Decl., ¶8 ("Specialized expertise, skills and reputations in the area of False Claims Act enforcement are necessary for counsel to bring *qui tam* actions, interact with the government over intervention and prevail on claims through settlement or judgment."); Friedman Decl., ¶12 ("Litigation of *qui tam* False Claims Act cases requires special skills and experience beyond the excellent legal work performed by capable attorneys in the general bars in geographic communities around the country").

As a result of the need for specialized skills and experience, and the dearth of qualified counsel, the marketplace for False Claims Act legal services is national, and the rates commanded are at a premium.

> Because of the need for specialized skills in False Claims Act cases, in the legal marketplace, qualified attorneys with the requisite *qui tam* litigation expeience command higher non-contingent hourly rates than attorneys with a general practice. Rates for capable, experienced *qui tam* counsel are not determined by the geographic location; the market is national. Although these attorneys may have offices in Boston, as I do, or in Providence, as does Louise Herman, these attorneys will command the same premium rate regardless of which district the action is filed. [Greene Decl., ¶6.]

*See also* Delaney Decl., ¶8 ("Respected *qui tam* practitioners command a premium for their time because of their skills and experience needed to perform the work on these cases"); Friedman Decl., ¶13 ("In order to obtain such specialized skills and experience in the legal marketplace, it is expected and accepted that the rates charged by *qui tam* litigants are higher than those charged by other attorneys even with the same number of years following graduation").

Based on these factors, substantial testimony exists in the record, by fee claimants but also by experienced *qui tam* experts, that the rate claimed by Herman and Friedman for an award in 2017 at $750 per hour – before taking into consideration enhancement for contingent risk – is reasonable and well within the prevailing range for rates claimed by comparably skilled and experienced attorneys. *See* Friedman Decl., ¶¶9-16 (providing detailed basis for rate determination); Durrell Decl., ¶11 12 ("In my opinion, [the $750 rate claimed] is commensurate with their level of seniority and experience and well within the prevailing range of rates charged by attorneys with a similar level of experience in this arena. This is particularly true, given their special skills and experience under the False Claims Act, precisely in the arenas of Health Care fraud for Herman, and attorneys' fees for Friedman, as well as their reputations as excellent attorneys capable of *qui tam* litigation and interacting with government attorneys"); Greene Decl., ¶8 (claimed rate "is consistentwith the rates charged, and paid, to attorneys with comparable skills and experience in qui tam litigation"); Delaney Decl., ¶10 ("In my opinion, the rates they

claim in this case are very reasonable and consistent with the rates charged and paid by other attorneys with similar knowledge, skills and reputation").[5]

## IV. Lodestar Enhancements are Warranted for Time Expended Leading Up to the Settlement Agreement

Under the two-step adjusted lodestar methodology, after the lodestar – literally, the North Star or guiding point – is calculated, it should be adjusted upward to account for factors not subsumed within the hours and rates determinations. *See Perdue,* 559 U.S. at 553. Prior to the decision in *City of Burlington v. Dague*, 505 U.S. 557 (1992), federal courts around the country enhanced fee determinations to account for the market treatment of contingent risk. *See, e.g., Bouman v. Block*, 940 F.2d 1211, 1236 (9th Cir. 1991). In *Dague*, however, the Supreme Court – ruling on a federal environmental statute which had no legislative history regarding determination of "reasonable attorneys" fees – held enhancement of the lodestar for contingent nature of the work would constitute "double-counting" and is contrary to statutory intent. *Dague* has been criticized in many forums, and its holding was expressly rejected by the California Supreme Court under California fees law in *Ketchum v. Moses,* 24 Cal.4th 1122 (2001). Subsequent to *Dague*, however, federal courts, including the First Circuit, have restrict lodestar enhancements. *See Lipsett v. Blanco*, 975 F.2d 934, 942 (1st Cir. 1992); *McLaughlin by MCLaughlin v. Bos. Sch. Comm*., 976 F. Supp. 53, 63-64 (D. Mass. 1997). The lodestar is "presumptively reasonable," and, under general fee-shifting statutes, should be adjusted only in rare and exceptional cases. *Perdue*, 559 U.S. at 554.

Section 3730(d)(1) of the False Claims Act is not such a general fee-shifting statute. Legislative history of the 1986 Amendments indicates Congress viewed the general civil rights fee-shifting statute, 42 U.S.C. §1988, as providing an analogous standard. *See* S.

---

[5]Moser claims his fees on this petition at the non-contingent hourly rate – *i.e.,* before enhancement for contingent risk – at $300 per hour. This rate is well below the market rate even for non-False Claims Act attorneys, with comparable training, skills, experience and reputation, to litigate cases in the Boston area. It is well below the average 2012 rate (which would be stale in 2017) for Boston partners ($682), reported in Massachusetts Lawyers Weekly. *See* Friedman Decl., ¶18.

Rep. No. 99-345, at 29, reprinted in 1986 U.S.C.C.A.N. 5266, 5294. But even that

legislative history pre-dates the decision in *Dague*. Contrary to the federal statute at issue

in *Dague*, as well as the legislative history for §1988, legislative history for the False

Claims Act is direct and on-point:

> [A] true marketplace rate in a False Claims Act case would be what
> competent counsel's expectations of an hourly rate would be at the time of
> the filing of the case understanding that payment will be made only after
> success is achieved, and only after the defendant is given the opportunity to
> challenge the amount requested, and where the judge or an appellate court
> may reduce the amount required, and where payment may not come until
> this process is concluded. **In such cases, that rate would be substantially
> greater than a rate where payment was guaranteed on a monthly basis
> regardless of whether the case was won or lost.** [House Report, 132
> Cong. Rec. H9382_03, 1986 WL 786917 (Cong.Rec.) (emphasis supplied).]

When it comes to the legal marketplace for services of experienced *qui tam* cases,

there is no doubt fees must be adjusted upwards in order to mirror the marketplace, and

thus attract competent counsel to take on these lengthy, complicated and risky cases, for

the benefit of federal taxpayers. *See* Durrell Decl., ¶12 ("We recognize that we may incur

substantial out-of-pocket expenses and invest a great deal of attorney time in any case

without any return, since the United States declines to join about three quarters of the

filed *qui tam* cases for a myriad of reasons, only some of which are based on the merits.

We are, therefore, very selective, accepting only those cases in which we believe there is

a strong likelihood of success and the ultimate recovery of fees that are significant enough

to compensate us for the contingent risk. In the norm, we require an expectation of

recovering a multiple of our lodestar before agreeing to take on a new case under the

Act"); Greene Decl., ¶10 ("The bulk of my practice is contingent fee work, and many of

my firm's cases have been large and substantial in settlement or verdict. In contingent

risk False Claims Act cases, my firm and other firms doing this type of work frequently

advance tens or hundreds of thousands of dollars in costs and defer all payment of our

fees for several years, with no guarantee that any of the fees we incurred or costs we

advanced will ever be recovered. ... These factors must also be considered in determining

a fair award for the legal services performed by Relator's counsel"); Friedman Decl.,

¶¶20-22 ("If the fee is set below that amount the legal marketplace determines to be reasonable, attorneys will not assume representation of persons for whom the statutory fee-shifting statutes are designed to protect. In my opinion, unless fees awarded or negotiated are fully reasonable – including compensation for the contingent nature of the representation – claims of relators such as the *qui tam* plaintiff here will simply fail for lack of representation. It is my expectation, in evaluating cases taken on a contingent fee basis, that the fee, if the case is successful, should be at least double my normal hourly rate. If the expected fee falls short of that mark, I would be disinclined to accept the risk of loss. This practice is consistent with the prevailing practice in the legal community for contingent risk cases, and is supported by declarations from other prominent attorneys. It is also my experience, based on my work on attorneys' fees litigation, that prevailing parties under fee shifting statutes are entitled to a substantial enhancement of the fee for contingent risk, usually in the order of 2.0 or greater").

Another approach to understanding market treatment concerns preclusion of other significant gainful employment. *See McLaughlin,* 976 F. Supp. at 63 (preclusion of employment relevant when "counsel affirmatively establish not merely that they lost business, but that the foregone opportunities would have been more profitable than what the court otherwise would propose to award") (citing *Lamphere v. Brown Univ.*, 610 F.2d 46, 47 n.2 (1st Cir. 1979)). In this case, Morgan-Lee's attorneys were sole practitioners, unable to take on at one time more than two or three major complex cases such as this one. More importantly for this point, the amount of time they actually billed in the case – spread out over years – does not accurately reflect the burden on their office. As Herman explains (¶34), during this litigation there were periods that did not demand significant time, but did not leave her with the availability to take on other major *qui tam* cases.

Given the unique circumstances of this *qui tam* litigation, including the years that it was pending and the extraordinary risks of litigation, and in consideration of the market treatment for the factor of contingent risk, relator requests a lodestar enhancement for Moser's time at 2.0, and for Herman's time at 1.5.

## V.  Counsel are Entitled To Reimbursement of Costs

Under §3730(d)(1), attorneys Moser and Herman are entitled to reimbursement of all reasonable costs and expenses. As detailed in their declarations, Moser incurred a total of $1534 in reimburseable costs (Moser Decl., ¶15, Exh. B); and Herman incurred a total of $10,985 in reimburseable costs (Herman Decl., ¶¶28 & 30, Exh. C).

## VI. Counsel are entitled to Fees on Fees

Attorney Herman, first independently and then through fees counsel, attempted to resolve the fees dispute with Whittier. Despite her best efforts (which included an offer of waiver of all of her "fees on fees" time expended prior to the settlement conference), Whittier required the filing of this fee petition. In addition to fees for work on the merits, counsel are also entitled to reasonable fees for work on this fees motion.

As with other fee-shifting statutes, under the False Claims Act, prevailing relators' counsel are entitled to fees for work establishing, and collecting, reasonable fees. *See United States ex rel. Simring v. Univ. Physician*, 2013 U.S. Dist. LEXIS 179451 *4 (D.N.J. 2013). As explained by the First Circuit: "It would be inconsistent with the purpose of [statute] to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee." *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978). *See also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981-983 (9th Cir. 2008) ("Fees on fees" must be determined by the same lodestar methodology, and downward adjustments are to be used only in "rare" cases).

Fees for work on this fees motion should not be discounted because it involves fees. Relator is entitled to a fee award under §3730(d), the same provision of the False Claims Act that provides for the relator's share. It takes the same level of skills and experience to claim fees against a litigating defendant as it takes to navigate through the False Claims Act. To the extent fees counsel possesses a high billing rate, his work reflects efficiency gained by handling dozens of fee disputes, including False Claims Act cases. Indeed, Herman here has agreed to pay fees counsel at his claimed hourly rate, and a reduced "fees on fees" would only dilute her ultimate award, to the detriment of the Act.

Moreover, the argument for a lower rate on fees work due to simplicity "is a discredited notion that has not found favor in most courts." *Doe v. Crestwood*, 764 F. Supp. 1258, 1262 (N.D. Ill. 1991). That is a rule born out of adherence to Supreme Court dictates in *Perdue,* 559 U.S. at 553. As explained recently by one district court:

> [T]o the extent that the District's proposal to further reduce the rate at which plaintiff will be reimbursed for fees-on-fees stems from a suggestion that the plaintiff's fee litigation was somehow less complex than her underlying administrative action, this argument is again foreclosed by clear Supreme Court precedent. In [*Perdue*], the Supreme Court recently reiterated that the purported complexity of a particular case generally may not serve as a basis for adjusting an otherwise reasonable fee award. ... In particular, and most importantly for the case at hand, the Court reiterated that "the novelty and complexity of a case generally may not be used as a ground for [a deviation from an otherwise applicable lodestar] because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'" ... [T]o the extent that the District now contends that the plaintiff's follow-on fee application presented less complexity than her initial administrative action, the Court must therefore presume that this relative simplicity is "fully reflected in the number of billable hours recorded [bu the plaintiff's] counsel." *Perdue,* 559 U.S. at 553. In other words, any consideration of the relative complexity of the present fees litigation as compared to the plaintiff's underlying administrative action is already incorporated into the reasonableness of the number of hours spent in litigating her request for fees before this Court. [*Jones v. District of Columbia*, 153 F. Supp. 3d 114, 124-25 (D.D.C. 2015) (citations omitted).]

Moreover, the rationale for assigning different rates to the same timekeeper is grounded on the expectation that attorneys at large firms will delegate less complicated work to less experienced lawyers. In this case, however, relator's counsel are sole practitioners, and even though they work with contract attorneys and some staff, none of the work on this fee petition could have been delegated to other attorneys.

In this case, fee claimant attorneys made substantial reductions to their "fees on fees" time, reducing almost all time spent preparing time records, conferring initially over the fee claim and entering into a contract with fees counsel. Similarly, fees counsel made substantial reductions to the hours expended, including more than 23 hours of billing judgment reductions, and the near exclusion of time in transit to and from the settlement conference. Counsel expect to incur additional fees and costs in connection with the response by Whittier, and will supplement their time records with the reply.

## CONCLUSION

For the foregoing reasons, relator requests that the Court award of **$1,470,609** in merits fees and costs, and **$157,680** for fees incurred to date in the litigation of fees, as outlined in the attached fee chart.

<div style="margin-left: 40%;">

Respectfully submitted,

</div>

Dated: March 17, 2017               Law Offices of Louise A. Herman
                                    Law Office of Jeremy L. Friedman


                        By:    /s/Jeremy L. Friedman_____
                               Jeremy L. Friedman

                               Attorneys for *qui tam* plaintiff
                               Rosemary Morgan-Lee

# FEE CHART

### 1. Merits Fees

| Timekeeper | Hours Claimed | Hourly Rates | Lodestar | x multiplier |
|---|---|---|---|---|
| Louise Herman | 1178 | $750 | $883,500 | x 1.5 = $1,325,250 |
| Nancy Troiano | 24.6 | $125 | $3,075 | |
| Casey McCaffrey | 26 | $200 | $5,200 | |
| Sidney Kirsch | 3.6 | $200 | $720 | |
| Costs: | | | $10,952 | |
| Herman Office Merits total: | | | $1,345,197 | |
| | | | | |
| Albin Moser | 205.3 | $300 | $61,590 | x 2.0 = $123,180 |
| Melissa Braatz | 3.5 | $200 | $700 | |
| Costs: | | | $1,534 | |
| Moser Office Merits Total: | | | $125,412 | |

**Total Merits fees and costs:**          $1,470,609

### 2. Fees on Fees

| Timekeeper | Hours Claimed | Hourly Rates | Lodestar |
|---|---|---|---|
| Jeremy Friedman | 125* | $750 | $93,750 (*est. as of 3/16/2017) |
| Louise Herman | 80* | $750 | $60,000 (*est. as of 3/16/2017) |
| Albin Moser | 8.1 | $300 | $2,430 |
| Costs: | | | $1,500 |

**Total Fees on Fees as of March 16, 2017:**          $157,680

[*Final time expenditures, documentation for costs and final calculation of fees on fees will be submitted with Reply.]

Louise A. Herman, Esq. (BBO No. 548995)
Law Offices of Louise A. Herman
321 South Main Street, Suite 300
Providence, RI 02903
(401) 277-4110
(401) 453-0073 Fax
email: lherman@lhermanlaw.com

Jeremy L. Friedman (CA Bar No. 152659) (*Pro Hac Vice*)
Law Office of Jeremy L. Friedman
2801 Sylhowe Road
Oakland, CA 94602
Telephone: (510) 530-9060
Facsimile: (510) 530-9087
email: jlfried@comcast.net

Attorneys for *qui tam* plaintiff and relator
Rosemary Morgan-Lee

## CERTIFICATE OF SERVICE

I, Jeremy L. Friedman, declare that a copy of the attached motion was served electronically on all parties listed with the Court for electronic service through the Court's ECF filing system on this day.

I declare under penalty of perjury according to the laws of Massachusetts and the United States, that the above is true and correct. Executed this 17th of March, 2017.


/s/Jeremy L. Friedman
Jeremy L. Friedman